Marian S. Rosen, Esq.
Marian S. Rosen & Associates
1330 Post Oak Boulevard, Suite 2910
Houston, Texas 77056
Tel.: (713) 222-6464 • Fax: (713) 227-4703
E-mail: marian@marianrosen.com
*(To apply as Counsel Pro Hac Vice)*

Howard Rubinstein (Fla. SBN: 104108)
Attorney at Law
914 Waters Avenue, Suite 20
Aspen, Colorado 81611
Tel.: (832) 715-2788
E-mail: howardr@pdq.net
*(To apply as Counsel Pro Hac Vice)*

Harold M. Hewell (Cal. SBN: 171210)
Hewell Law Firm
402 W. Broadway, Fourth Floor
San Diego, California 92101
Tel: (619) 235-6854 • Fax: (619) 235-9122
E-mail: hmhewell@hewell-lawfirm.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| **DEBORAH FRAKER,** as an individual consumer, and on behalf of all others similarly situated, | **Civil No.:** |
| *Plaintiff,* | **COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES** |
| vs. | **CLASS ACTION** |
| | ***Jury Trial Requested*** |
| **BAYER CORPORATION,** a Indiana corporation, | |
| *Defendant.* | |

Plaintiff alleges:

## I. PARTIES

1. Plaintiff Deborah Fraker is an individual consumer who resides in, and is a citizen of California. She brings this action on behalf of herself as an individual consumer and on behalf of all others similarly situated. She requests a jury trial.

2. Defendant Bayer Corporation ("Bayer") is an Indiana corporation with headquarters located at 100 Bayer Road, Pittsburgh, Pennsylvania 15205, and an office and place of business located at 36 Columbia Road, Morristown, New Jersey 07962. For purposes of diversity jurisdiction, Bayer may be considered to be a "citizen" of Indiana, Pennsylvania or New Jersey. Bayer, which has annual sales in excess of $10 billion, through its subsidiaries, manufactures and sells a variety of products, including vitamins, dietary supplements, and over-the-counter and prescription drugs. Bayer HealthCare, LLC, a subsidiary of Bayer, markets and sells One-A-Day brand vitamins and supplements, including "One-A-Day WeightSmart" multivitamin and dietary supplement. At all times relevant herein, Bayer was and is doing business within the County of San Diego, California, and within the Southern District of California, United States District Court. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that the employees of Bayer, its subsidiaries, affiliates and other related entities, as well as the employees of those subsidiaries, affiliates and other related entities, were the agents, servants and employees of Bayer, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Bayer, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of said Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of said Defendant while actively engaged in the scope of their duties.

## II. VENUE AND JURISDICTION

3. This Court enjoys jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the

Federal Courts of any class action in which any member of the Plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). Plaintiff is a citizen of California, whereas, as set forth above, Bayer can be considered a citizen of Indiana, Pennsylvania or New Jersey for the purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than California, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district and because Defendant may be found in and is subject to personal jurisdiction in this district. The required "Declaration of Harold M. Hewell Pursuant to Civil Code §1780(c) of the Consumer Legal Remedies Act, Civil Code §1750 et seq." regarding venue under the Consumer Legal Remedies Act ("CLRA") submitted for filing with this Complaint and is incorporated herein by reference.

### III. FACTUAL ALLEGATIONS

5. All allegations in this Complaint are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery. Plaintiff repeats, re-alleges and incorporates by reference the paragraphs above.

6. Bayer promotes, advertises and markets One-A-Day WeightSmart as "a safe way to supplement the effort you are making to better control your weight."

7. On or about January 3, 2007, the United States, acting upon the notification and authorization to the U.S. Attorney General by the Federal Trade Commission ("FTC"), filed an action against Bayer ("Lawsuit") in the United States District Court, District of New Jersey,

under Sections 5(1), 13(b) and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(1), 53(b) and 56(a).[1] The Lawsuit sought monetary civil penalties, a permanent injunction, rescission of contracts, restitution, disgorgement of ill-gotten gains and other equitable relief from Bayer for violation of a final FTC order to cease and desist. A true and correct copy of the Lawsuit is attached hereto as Exhibit "A" and incorporated by reference.

8. The lawsuit was based on an earlier FTC proceeding,[2] in which the FTC charged Miles, Inc., [3] a U.S. subsidiary of Bayer Group of Germany, with violating Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. On January 28, 1991, the FTC entered a final order against Miles Inc., to cease and desist certain advertising practices with respect to One-A-Day brand vitamin and mineral supplements ("Order," a copy of which is attached as Exhibit "A" to the Lawsuit (Exhibit "A" to this Complaint.)) The Order was served upon Miles, Inc., in 1991, and remained in full force. The Order included a provision that:

> respondent Miles Inc., a corporation, its successors and assigns, and its officers, agents, representatives and employees, directly or through any corporation, subsidiary, division or other device, in connection with the advertising, offering for sale, sale, or distribution of One-A-Day brand vitamins, including specifically, but not limited to, One-A-Day Maximum Formula, One-A-Day Stressguard, One-A-Day Essential, One-A-Day Plus Extra C, and One-A-Day Within, do forthwith cease and desist from making any representation, directly or by implication, concerning the need for or benefits to be derived from consumption of such product unless, at the time such representation is made, respondent possesses and relies upon a reasonable basis consisting of competent and reliable scientific evidence to substantiate the representation; competent and reliable scientific evidence shall mean those tests, analyses, research, studies or other evidence, conducted and evaluated in an objective manner by persons qualified to do so using procedures generally accepted by others in the profession or science to yield accurate and reliable results.

Order, Sect. II, pp. 2-3.

---

[1] *United States of America v. Bayer Corporation,* United States District Court, District of New Jersey, Civil Action No. 07-01 (HAA).

[2] Docket No. C-3323.

[3] Bayer is a successor to Miles, Inc., and subject to the Order.

9. In the Lawsuit, the United States alleged that Bayer had engaged in a national advertising campaign for One-A-Day WeightSmart that made unsubstantiated claims that the product increased metabolism, enhanced metabolism through its EGCG content,[4] helped prevent weight gain associated with age-related metabolism decline, and helped users control their weight by enhancing their metabolism.

10. The advertising campaign was conducted through the use of various media, including television, radio, the internet, newspapers and national magazines. The Lawsuit alleged that these unsubstantiated claims violated the Order, specifically the section cited above requiring that all claims regarding the benefits of One-A-Day brand products be substantiated by competent and reliable scientific evidence.

11. On January 4, 2007, the FTC announced that it had entered into a consent decree ("Consent Decree") by which the parties agree to settle the Lawsuit. A true and correct copy of the Consent Decree is attached hereto as Exhibit "B" and incorporated by reference.

12. Pursuant to the terms of the Consent Decree, pending Court approval, Bayer will pay a $3.2 million civil penalty and is prohibited from violating the earlier FTC Order.

13. Additionally, the Consent Decree provides that, with regard to the manufacture, labeling, advertising, promotion, offer for sale, sale, or distribution of any dietary supplement, or multivitamin, including but not limited to One-A-Day WeightSmart, Bayer is permanently enjoined from:

> making any representation, including through endorsements or trade name, expressly or by implication:
> A.    That such product or any of its ingredients:
> > 1.    Increases metabolism;
> > 2.    Enhances metabolism through its EGCG content;
> > 3.    Helps prevent some of the weight gain associated with a decline in metabolism in users over age 30;
> > 4.    Helps users control their weight by enhancing their metabolism;
> > 5.    Makes a material contribution to any program or system that promotes weight maintenance;
> > 6.    Can or will cure, treat, or prevent any disease; or

---

[4] Epigallocatechin gallate, an extract from green tea.

7.      Have any effect on the structure or function of the human

B.      About the benefits, performance, efficacy, safety or side effects, of such product or any of its ingredients; unless at the time the representation is made, Defendant Bayer Corporation possesses and relies upon competent and reliable scientific evidence that substantiates the representation.

Consent Decree, Sect. III, pp. 4-5

The Consent Decree also bars Defendant from making any representation for any drug that is permitted in the labeling for such drug under any tentative final or final standard promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration;

and … [a]ny representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990.

Consent Decree, Sect. IV, p. 5.

14. Plaintiff, believing generally in the good name and reputation of Bayer, and having been exposed to the advertising, marketing and labeling representations by Bayer that One-A-Day WeightSmart helped control hunger, increased metabolism, enhanced metabolism through its EGCG content, helped prevent weight gain associated with age-related metabolism decline, and helped users control their weight by enhancing their metabolism, purchased and spent money on the product at the Wal-Mart at 250 S. 12th Street in Hanford, California, several times within the past four years. In exchange, she received a product that lacked the advertised benefits, and lost money on the purchase when she received an ineffective product.

## IV. CLASS ALLEGATIONS

15. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

16. Pursuant to California Civil Code §1781, California Code of Civil Procedure §382, and Federal Rule of Civil Procedure ("FRCP") 23, Plaintiff brings this action on behalf of herself and all other consumers who purchased One-A-Day WeightSmart during the Class Period. Defendant's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All putative

Class members were and are similarly affected by having purchased One-A-Day WeightSmart, and the relief sought herein is for the benefit of Plaintiff and members of the putative class. Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class is so numerous that joinder of all members would be impractical.

17. Based on the annual sales of One-A-Day WeightSmart and the popularity of that product, it is apparent that the number of consumers of One-A-Day WeightSmart would at least be in the many thousands, thereby making joinder impossible

18. Questions of law and fact common to the Plaintiff Class and the subclasses exist that predominate over questions affecting only individual members, including the following:

(a) Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of One-A-Day WeightSmart were deceptive, unlawful or unfair in any respect, thereby violating California's Unfair Competition Law ("UCL), California Bus. & Prof. Code § 17200 et seq.;

(b) Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of One-A-Day WeightSmart were deceptive, unlawful or unfair in any respect, thereby violating California's False Advertising Law ("FAL), California Bus. & Prof. Code § 17500 et seq.;

(c) Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of One-A-Day WeightSmart were false and/or misleading;

(d) Whether Defendant has violated California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq., by the practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of One-A-Day WeightSmart within this state.

(e) Whether Defendant's conduct as set forth above injured consumers, and if so, the extent of the injury.

19. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class as the claims arise from the same course of conduct by Defendant, and the relief sought is common.

20. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and all subclasses. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

21. Certification of this class action is appropriate under FRCP 23(b), California Code of Civil Procedure § 382 and California Civil Code § 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

22. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery. Certification is also appropriate because Defendant acted or refused to act on grounds generally applicable to the class. Further, given the large number of consumers of One-A-Day WeightSmart, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications, an outcome that further supports the benefit of bringing this as a class action.

23. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

24. In the aggregate, Plaintiff contends that the claims of the individual Class members

exceed the sum of $5,000,000.00, exclusive of interest and costs.

## V. FIRST CAUSE OF ACTION:

### FOR VIOLATION OF BUS & PROF. CODE §17200 ET SEQ.

25. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

26. This cause of action is brought on behalf of Plaintiff and Class members pursuant to California Bus. & Prof. Code § 17200 et seq., which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

27. Plaintiff is informed and believes, and based on such information and belief alleges, that Defendant committed an unfair business act or practice in representing that One-A-Day WeightSmart increased metabolism, enhanced metabolism through its EGCG content, helped prevent weight gain associated with age-related metabolism decline, helped users control their weight by enhancing their metabolism, and was "a safe way to supplement the effort you are making to better control your weight." The utility of Defendant's misleading and/or deceptive labeling, advertising, promotion or marketing, as well as its misrepresentation of the weight loss benefits of One-A-Day WeightSmart with respect to the same for the purpose of selling One-A-Day WeightSmart is negligible, if any, when weighed against the extent of harm to the general public, Plaintiff and Class members. The harmful effect upon Plaintiff and Class members who were and are misled and deceived with respect to Defendant's labeling, advertising, promotion or marketing of One-A-Day WeightSmart far outweighs any reasons or justifications by Defendant in not disclosing the truth about One-A-Day WeightSmart, as set forth in detail above, in its labeling, advertising, promotion or marketing of that product. Defendant had an improper motive (as alleged in this Complaint) in misrepresenting and/or omitting the truth about One-A-Day WeightSmart in its labeling, advertising, promotion and/or marketing. The utilization of unlawful, unfair and/or deceptive practices was and is under the sole control of Defendant, and was fraudulently and deceptively hidden from Plaintiff and Class members in

Defendant's labeling, advertising, promotion or marketing. As a purchaser and consumer of One-A-Day WeightSmart and as a member of the general public in California who has been injured by Defendant's unlawful and/or unfair practices, Plaintiff is entitled to and does bring this class action seeking all available remedies under the UCL, including restitution as well as attorneys' fees and costs.

28. Defendant committed a deceptive act or practice by making written and/or oral material representations (and material omissions) including, but not limited to, representing that One-A-Day WeightSmart increased metabolism, enhanced metabolism through its EGCG content, helped prevent weight gain associated with age-related metabolism decline, helped users control their weight by enhancing their metabolism, and was "a safe way to supplement the effort you are making to better control your weight." These representations have a capacity, tendency, or likelihood to deceive or confuse reasonable consumers regarding the weight loss benefits of One-A-Day WeightSmart as set forth above in this Complaint. Defendant also has committed deceptive acts or practices by violating federal statutory provisions set forth in detail above and the CLRA as set forth below.

29. Defendant also committed unlawful acts and practices within the scope of the UCL by violating federal statutory provisions as set forth in detail above and the CLRA as set forth below. These statutory violations serve as predicate violations of this prong of the UCL.

30. Defendant's acts, misrepresentations, concealment of material facts and failures to disclose, as alleged in this Complaint, constitute unlawful, unfair and/or deceptive business practices within the meaning of California Bus. & Prof. Code § 17200 et seq. Plaintiff and Class members were deceived by Defendant's scheme to misrepresent the weight loss benefits of One-A-Day WeightSmart.

31. Pursuant to California Bus. & Prof. Code §17203, Plaintiff, on behalf of herself and Class members, seeks an order of this Court restoring all monies that may have been acquired by Defendant as a result of such unlawful, unfair, or deceptive act or practices.

32. As a result of Defendant's violation of the UCL, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm.

33. Pursuant to Civil Code §3287(a), Plaintiff and Class Members are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and Class members are entitled to interest in an amount according to proof.

### VI. SECOND CAUSE OF ACTION:

### FOR VIOLATION OF BUS. & PROF. CODE §17500 ET SEQ.

34. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

35. In violation of California Bus. & Prof. Code §17500, Defendant has disseminated, or caused to be disseminated, false and misleading statements and representations in advertisements, promotion and/or marketing for One-A-Day WeightSmart, including, but not limited to, representing that One-A-Day WeightSmart increased metabolism, enhanced metabolism through its EGCG content, helped prevent weight gain associated with age-related metabolism decline, helped users control their weight by enhancing their metabolism, and was "a safe way to supplement the effort you are making to better control your weight."

36. Defendant's representations in the advertisements, promotions and/or marketing of One-A-Day WeightSmart are untrue and/or misleading as set forth above. Defendant also has disseminated, or caused to be disseminated, false and misleading statements and representations in advertisements, promotion and/or marketing for One-A-Day WeightSmart by violating the federal statutory provisions set forth above and the provisions of the CLRA as set forth below.

37. Defendant disseminated labeling and advertising concerning One-A-Day WeightSmart which by its very nature is unfair, deceptive, untrue or misleading within the meaning of California Bus. & Prof. Code §17500 et seq.

38. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, as it was subject to the above-referenced Order and had no competent or reliable scientific evidence to support its claims, and therefore it acted in violation of California Bus. & Prof. Code §17500 et seq.

39. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the

Class Members have suffered substantial monetary and non-monetary damage. Pursuant to California Business and Professions Code §17535, Plaintiff, on behalf of herself and Class members, seeks an order of this Court restoring all monies that may have been acquired by means of Defendant's false and misleading statements in advertisements, promotions and/or marketing described herein.

40. Pursuant to Civil Code section 3287(a), Plaintiff and Class members are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of funds paid by Plaintiff and Class members as a result of those acts is a sum certain and capable of calculation, and Plaintiff and Class members are entitled to interest in an amount to be set forth according to proof.

## VII. THIRD CAUSE OF ACTION:

## FOR NEGLIGENT MISREPRESENTATION

41. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

42. At the time of each purchase, at the point of sale, Defendant represented to Plaintiff and each Class Member by means of representations made on the One-A-Day WeightSmart labeling and packaging that One-A-Day WeightSmart:

(a)     was "Specially formulated to help you While You Control Your Weight";

(b)     that it contained "EGCG, natural green tea extract to enhance your metabolism"; and that

(c)     "Starting in your 30's your body's metabolism can slow down and you can gain weight. To help maintain healthy metabolism levels, you need to give your body key nutrients. That is why One A Day has created WeightSmart, a unique complete multivitamin with EGCG (a natural extract of green tea) to enhance your metabolism."

43. Defendant's representations were untrue as set forth above.

44. Defendant made the representations herein alleged with the intention of inducing Plaintiff and the public to purchase One-A-Day WeightSmart.

45. Plaintiff and Class members saw, believed, and relied on Defendant's labeling and advertising representations and, in reliance on them, purchased One-A-Day WeightSmart. Said reliance was reasonable, given Bayer's generally good reputation among consumers.

46. At the time Defendant made the misrepresentations herein alleged, Defendant had no reasonable grounds for believing the representations to be true, as it possessed no competent and reliable scientific evidence to substantiate the representations set forth in detail above, and was already subject to the above-referenced Order.

47. As a proximate result of the foregoing negligent misrepresentations by the Defendant, Plaintiff and Class members were induced to spend an amount to be determined at trial on One-A-Day WeightSmart and they were deprived of the weight loss benefits represented by Defendant. Accordingly, and as a proximate result of Defendant's misrepresentations as set forth herein, Plaintiff and Class members lost the money they paid for the product in an amount to be determined at trial in that it did not have the qualities they sought, which Defendant represented to them that it had. Had Plaintiff and the Class members known the true facts about the product, they would not have purchased it.

## VIII. FOURTH CAUSE OF ACTION:

## FOR INTENTIONAL MISREPRESENTATION

48. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

49. At the time of each purchase, at the point of sale, Defendant represented to Plaintiff and each Class Member by means of representations made on the One-A-Day WeightSmart labeling and packaging that One-A-Day WeightSmart:

(a)   was "Specially formulated to help you While You Control Your Weight";

(b)   that it contained "EGCG, natural green tea extract to enhance your metabolism"; and that

(c)   "Starting in your 30's your body's metabolism can slow down and you can gain weight. To help maintain healthy metabolism levels, you need to give your body key nutrients. That is why One A Day has created WeightSmart, a unique

complete multivitamin with EGCG (a natural extract of green tea) to enhance your metabolism."

50. Defendant's representations were untrue as set forth above.

51. Defendant made the representations herein alleged with the intention of inducing Plaintiff and the public to purchase One-A-Day WeightSmart.

52. Plaintiff and Class members saw, believed, and relied on Defendant's labeling and advertising representations and, in reliance on them, purchased One-A-Day WeightSmart. Said reliance was reasonable, given Bayer's generally good reputation among consumers.

53. At the time Defendant made the representations herein alleged, Defendant knew the representations were false, as evidenced by the above-referenced Order above and Defendant's failure, despite that Order, to establish any competent or reliable scientific evidence to support its claims. Even so, Defendant continued to make the unsubstantiated, false claims.

54. Defendant made these misrepresentations with the intention of depriving Plaintiff and Class members of property or otherwise causing injury, and is guilty of fraud.

55. As a proximate result of the foregoing intentional misrepresentations by the Defendant, Plaintiff and Class members were induced to spend an amount to be determined at trial on One-A-Day WeightSmart and they were deprived of the weight loss benefits represented by Defendant. Accordingly, and as a proximate result of Defendant's intentional misrepresentations as set forth herein, Plaintiff and Class members lost the money they paid for the product in an amount to be determined at trial in that it did not have the qualities they sought, which Defendant represented to them that it had. Had Plaintiff and the Class members known the true facts about the product, they would not have purchased it.

56. Plaintiff is informed and believes and thereon alleges that Defendant knew that One-A-Day WeightSmart did not offer weight loss benefits as it represented, and that it intended that customers and the unknowing public should rely on its representations. Such knowledge is evidenced by Bayer's actions as set forth above in continuing to make the representations regarding One-A-Day WeightSmart during the pendency of the Order, despite Bayer's lack of competent and reliable scientific evidence to support its claims. Plaintiff and Class members, in

purchasing and using the products as herein alleged, did rely on Defendant's representations, all to their damage as hereinabove alleged. In doing these things, Defendant was guilty of malice, oppression and fraud, and Plaintiff and Class members are entitled to recover punitive damages.

## IX. FIFTH CAUSE OF ACTION:

### FOR VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

57. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

58. The acts and practices described above were undertaken by the Defendant in connection with a "transaction" (as defined in Civil Code §1761(e)) which was intended to and did result in the sale of "goods" (as defined in Civil Code §1761(a)) to "consumers" (as defined in Civil Code §1761(d)). Defendant's acts and practices, as alleged in detail above, violated, and continue to violate, Section 1770(a)(5) of the CLRA in that Defendant represented to the public, including Plaintiff and Class Members, by means of means of labeling, advertisements, promotion and/or marketing, that One-A-Day WeightSmart increased metabolism, enhanced metabolism through its EGCG content, helped prevent weight gain associated with age-related metabolism decline, helped users control their weight by enhancing their metabolism, and was "a safe way to supplement the effort you are making to better control your weight." As set forth in detail above, these representations are not true.

59. Plaintiff and Class members seek and are entitled to equitable relief in the form of an order:

(a)     Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described above; and

(b)     Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described above.

60. Pursuant to Section 1782 of the CLRA, Plaintiff is notifying Defendant in writing of the particular violations of Section 1770 of the CLRA (the Notice) and is demanding, among other things, that Defendant cease marketing the Product as set forth in detail above. Plaintiff is sending Notice by means of by certified mail, return-receipt requested to Defendant concurrent

with the service of this Complaint. If Defendant fails to respond to Plaintiff's demand within thirty days of this letter, pursuant to section 1782 of the CLRA, Plaintiff will amend this Complaint to request statutory damages, actual damages, plus punitive damages, interest and attorneys' fees. Regardless of such an amendment to seek damages, however, Plaintiff seeks and is entitled to, pursuant to Section 1780(a)(2) of the CLRA, an order as set forth herein enjoining the above-described wrongful acts and practices of Defendant, plus costs and attorneys' fees and any other relief that the Court deems proper.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, and for members of the general public, prays for relief, jointly and severally, pursuant to each cause of action set forth in this Complaint as follows:

1. For an order certifying that the action may be maintained as a class action.

2. For an award of equitable relief as follows:

    (a) Enjoining Defendant from continuing to engage in the unlawful, unfair and fraudulent business practices and deceptive marketing, promotion labeling and advertising described in this Complaint;

    (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

    (c) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described in this Complaint; and

    (d) Requiring Defendant to provide public notice of the true nature of the Product.

3. For actual and punitive damages under the CLRA in an amount to be proven at trial, including any damages as may be provided for by statute upon the filing of a Second Amended Complaint should the demanded corrections not take place within the thirty-day notice period.

4. For an award of attorneys' fees pursuant to, inter alia, Section 1780(d) of the CLRA and Code of Civil Procedure § 1021.5.

5. For actual damages in an amount to be determined at trial for the Third, Fourth, Sixth and Seventh Causes of Action.

6. For punitive damages in an amount to be determined at trial for the Seventh Cause of Action.

7. For an award of costs and any other relief the Court might deem appropriate. 8. For pre- and post-judgment interest on any amounts awarded.

Dated: October 15, 2008.                    HEWELL LAW FIRM

                                            By: /s/ Harold M. Hewell
                                                Harold M. Hewell

                                            Marian S. Rosen, Esq.
                                            Marian S. Rosen & Associates
                                            1330 Post Oak Boulevard, Suite 2910
                                            Houston, Texas 77056
                                            Tel.: (713) 222-6464; Fax: (713) 227-4703
                                            E-mail: marian@marianrosen.com
                                            *(To apply as Counsel Pro Hac Vice)*

                                            Howard Rubinstein (Fla. SBN: 104108)
                                            Attorney at Law
                                            914 Waters Avenue, Suite 20
                                            Aspen, Colorado 81611
                                            Tel.: (832) 715-2788
                                            E-mail: howardr@pdq.net
                                            *(To apply as Counsel Pro Hac Vice)*

                                                Attorneys for Plaintiff

# <u>EXHIBIT LIST</u>

### EXHIBIT                              PAGES

**Exhibit "A":**                                        A - 20 through A - 54
Copy of Complaint,
*United States of America v. Bayer Corporation,*
United States District Court, District of New Jersey,
Civil Action No. 07-01 (HAA)

**Exhibit "B":**                                        B - 56 through B - 67
Copy of Consent Decree,
*United States of America v. Bayer Corporation,*
United States District Court, District of New Jersey,
Civil Action No. 07-01 (HAA)

Exhibit "A"

CHRISTOPHER J. CHRISTIE
United States Attorney

Daniel Gibbons
Assistant United States Attorney
Peter W. Rodino Federal Building
7th Floor
970 Broad Street
Newark, NJ 07102



RECEIVED

JAN - 3 2007

AT 8:30 WILLIAM T. WALSH
CLERK

M

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | COMPLAINT FOR CIVIL |
| ) | PENALTIES, INJUNCTIVE |
| ) | AND OTHER RELIEF |
| v.  ) | |
| ) | CIV. ACTION NO. *07- 01 (HAA)* |
| BAYER CORPORATION,  ) | |
| ) | |
| Defendant.  ) | |

        Plaintiff, United States of America, acting upon the notification and authorization to the

Attorney General by the Federal Trade Commission ("Commission"), for its Complaint alleges

that:

1.      Plaintiff brings this action under Sections 5(l), 13(b) and 16(a) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 45(l), 53(b) and 56(a), to obtain monetary civil

penalties, a permanent injunction, recision of contracts, restitution, disgorgement of ill-gotten

gains, and other equitable relief from defendant for its violations of a final Commission order to

cease and desist.

1

Exhibit "A", page 20 of 67

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), 1345 and

1355 and under 15 U.S.C. §§ 45(l), 53(b) and 56(a).

3.      Venue in the United States District Court for the District of New Jersey is proper under

15 U.S.C. § 53(b) and under 28 U.S.C. §§ 1391(b-c) and 1395(a).

## DEFENDANT

4.      Defendant Bayer Corporation is an Indiana corporation with its headquarters located at

100 Bayer Road, Pittsburgh, PA 15205, and an office and place of business located within the

District of New Jersey at 36 Columbia Road, Morristown, New Jersey 07962.  Bayer

Corporation, with annual sales exceeding $10 billion, through its subsidiaries, manufactures and

sells a variety of products, including vitamins, dietary supplements, and over-the-counter and

prescription drugs.  Bayer HealthCare, LLC is a subsidiary of defendant Bayer Corporation, and

markets and sells One-A-Day brand vitamins and supplements, including One-A-Day

WeightSmart.

5.      At all times material herein, defendant has been engaged in the advertising, offering for

sale, sale, or distribution of the One-A-Day WeightSmart multivitamin and dietary supplement in

or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## PRIOR COMMISSION PROCEEDING

6.      In a Commission proceeding bearing Docket No. C-3323, in which the Commission

charged Miles Inc., a U.S. subsidiary of Bayer Group of Germany, with violating Sections 5(a)

and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, the Commission, on January 28, 1991,

entered a final order against Miles Inc., to cease and desist certain advertising practices with

respect to One-A-Day brand vitamin and mineral supplements ("Commission's Order").  The

order was served upon Miles Inc., in 1991, and remains in full force.

2

7.     Defendant Bayer Corporation is a successor to Miles Inc. and subject to the

Commission's Order.

8.     The Commission's Order, attached to this Complaint as Exhibit A, includes the following

provision:

<u>ORDER</u>

\*    \*    \*

II.

IT IS FURTHER ORDERED that respondent Miles Inc., a corporation, its
successors and assigns, and its officers, agents, representatives and employees,
directly or through any corporation, subsidiary, division or other device, in
connection with the advertising, offering for sale, sale, or distribution of One-A-
Day brand vitamins, including specifically, but not limited to, One-A-Day
Maximum Formula, One-A-Day Stressguard, One-A-Day Essential, One-A-Day
Plus Extra C, and One-A-Day Within, do forthwith cease and desist from making
any representation, directly or by implication, concerning the need for or benefits
to be derived from consumption of such product unless, at the time such
representation is made, respondent possesses and relies upon a reasonable basis
consisting of competent and reliable scientific evidence to substantiate the
representation; competent and reliable scientific evidence shall mean those tests,
analyses, research, studies or other evidence, conducted and evaluated in an
objective manner by persons qualified to do so using procedures generally
accepted by others in the profession or science to yield accurate and reliable
results.

\*    \*    \*

<u>DEFENDANT'S ONE-A-DAY WEIGHTSMART</u>

9.     Each tablet of defendant's One-A-Day WeightSmart multivitamin and dietary supplement

contains, among other things, 32 mg of EGCG (epigallocatechin gallate) from extract of green

tea (Camilla sinensis leaf), as well as vitamins, minerals, and caffeine.  (An earlier formulation of

the product contained 27 mg of EGCG.)  The recommended daily dose is one tablet.  Various

3

retailers have sold One-A-Day WeightSmart to consumers at prices ranging from about $8.99 for 50 tablets to about $16.99 for 100 tablets.

## DEFENDANT'S ADVERTISING FOR ONE-A-DAY WEIGHTSMART

10.    On numerous occasions since January 2003, defendant has disseminated or caused to be disseminated advertisements for One-A-Day WeightSmart, including but not limited to 30- and 15-second commercials on network and cable television, print advertisements in various magazines, such as Better Homes and Gardens, Cooking Light, Family Circle, Redbook, and TV Guide, and Internet advertisements at www.oneaday.com. These advertisements, which include, but are not necessarily limited to, the attached Exhibits B-J, contain the following statements and depictions, among others:

A.    Television Commercial: "Remember When" 30-second

MOM: I remember when I thought I could eat anything.
DAUGHTER: *(eating pizza)* Want another piece?
MOM: No thanks.
MOM: Then in my 30's, my metabolism slowed down. So, I got smart.
MOM: I watch what I eat. Exercise more.
MOM: Plus, I found a new multivitamin.
ANNOUNCER: One-A-Day WeightSmart. The first and only complete multivitamin with an ingredient to enhance your metabolism. EGCG, a natural green tea extract, to help you while you manage your weight.
MOM: A multivitamin for my metabolism. Now that's smart.
ANNOUNCER: One-A-Day WeightSmart.

(Exhibit B)

B.    Television Commercial: "Boom Box" 15-second

VIDEO: Woman listening to radio inside home
MALE (VO) *(on radio)*: Just in! Most women over 30 can gain 10 pounds a decade, due in part to slowing metabolism. (SUPER: Average female weight gain over a decade.)
VIDEO: Woman throwing radio out the window
MALE (VO) *(on radio)*: So eat right, exercise, and take One-A-Day WeightSmart. The complete multi-vitamin with EGCG to enhance metabolism. (SUPER: For nutritional support only. Not a weight loss product.)
WOMAN: Now you tell me.

4

MALE (VO) *(on radio)*: One-A-Day WeightSmart.  (SUPER: The multivitamin with more for your metabolism.)

(Exhibit C)

C.      Television Commercial: "Saturday Morning" 30-second

WOMAN: There was a time when I ate like this. *(Visual of boy eating donut)*
WOMAN: But then, in my 30s, my metabolism slowed down.  So now I exercise more, eat smarter.  *(Visual of woman walking with her family)*  And I found One-A-Day WeightSmart.
ANNOUNCER: *(Visual of WeightSmart package)* (SUPER: For nutritional support only. Not a weight loss product.) One-A-Day WeightSmart, the first complete multi-vitamin with EGCG, a natural green tea extract to enhance metabolism *(Visual of woman walking with boy)* to help you while you manage your weight.
WOMAN: A multivitamin for your metabolism, now that's smart.
ANNOUNCER: One-A-Day WeightSmart.  (SUPER: The multivitamin with more for your health.)

(Exhibit D)

D.      Television Commercial:  "Simple Exercise" 30-second

WOMAN: After 30, your metabolism can slow down and you know how hard that can make things.  Here's an easy exercise that can help.  One-A-Day WeightSmart.  Just lift, and twist and bend. *(woman opening WeightSmart bottle)*
ANNOUNCER: One-A-Day WeightSmart.  A complete multivitamin with EGCG, a natural green tea extract, to enhance metabolism. (SUPER: For nutritional support only. Not a weight loss product.)
WOMEN *(women in an exercise class opening WeightSmart bottles)*: And lift and twist and bend. (SUPER: Use with diet and exercise.)
WOMAN: Just once a day.  That's easy.
ANNOUNCER and SUPER: One-A-Day WeightSmart.  The multivitamin with more for your metabolism.

(Exhibit E)

E.      Television Commercial:  "Dessert" 15-second

*(Two women, JANE and MARTHA, sit at a table as a dessert cart rolls by.)*
JANE: Do you want some dessert?
MARTHA: Not with my metabolism.
JANE: Yea, in your 30's your metabolism slows.
MARTHA: What can you do?

5

JANE: You know what I do?  I eat right, exercise *(visual of JANE walking with a dog)*, and I switched to One-A-Day WeightSmart.

*(visual of One-A-Day WeightSmart packaging in which the letters "EGCG" pop out and glow)*

JANE (cont.): It's a complete multivitamin, with EGCG, to help enhance metabolism.

(SUPER: For nutritional support only.  Not a weight loss product.)

(SUPER (CBS): This statement have [sic] not been evaluated by the FDA.  This product is not intended to diagnose, treat, cure, or prevent any disease.)

MARTHA: Every little bit helps.

ANNOUNCER: One-A-Day WeightSmart.


(Exhibit F)


F.    Television Commercial: "Beach" 15-second


*(Two women, MOM 1 and MOM 2, walk along a beach and pass by an ice cream vendor.)*

MOM 2: Ice cream?

MOM 1: With my metabolism?

MOM 2: Yea, in your 30's, your metabolism slows.  So I eat right, I exercise, and I switched to One-A-Day WeightSmart.

ANNOUNCER: It's a complete multivitamin… (SUPER: For nutritional support only. Not a weight loss product.)

ANNOUNCER (cont.): with EGCG to help enhance metabolism.

MOM 1: I'll take all the help I can get.

ANNOUNCER: One-A-Day WeightSmart.  (SUPER: oneaday.com)


(Exhibit G)


G.    Print Advertisement


You're working on your metabolism.
*(Picture of two women walking)*
Is your multivitamin?
*(Picture of One-A-Day WeightSmart package)*

Introducing New One-A-Day WeightSmart.
Starting in your 30s, your metabolism slows down and you can gain weight.  Now One-A-Day WeightSmart is the first and only complete multivitamin with EGCG, a natural green tea extract that enhances your metabolism to help while you work to control your weight.  When you do your part by eating right and exercising, One-A-Day WeightSmart can help.


*(Picture of capsule with "One-A-Day" logo)* The multivitamin with more for your health.


6

For nutritional support as part of a healthy lifestyle. These statements have not been evaluated by the FDA. This product is not intended to diagnose, treat, cure, or prevent any disease.

(Exhibit H)

H.    Internet Advertisement

One-A-Day WeightSmart

FREQUENTLY ASKED QUESTIONS

. . .

Q: How does your metabolism work?
A: Metabolism is the sum of all reactions in the body. Burning fat is an important part of metabolism. As you burn fat, you are using calories and if you burn more calories than you take in, you can lose weight. However, as you enter your 30's, your metabolism will naturally slow down and you may gain weight.

To help keep your metabolism going strong, One-A-Day created WeightSmart. With the key ingredient EGCG (Green Tea Extract), WeightSmart is a complete multi-vitamin plus more to enhance your metabolism while you are working to control your weight.

(Exhibit I)

I.    Packaging

| NEW FORMULA | 32 mg EGCG |
|---|---|

## ONE A DAY

DIETARY SUPPLEMENT

### *Weight Smart*®

| EPHEDRA FREE | 100 TABLETS |
|---|---|

***MORE†† OF A METABOLISM PROMOTING NUTRIENT*** *

*Weight Smart*®

Complete
Multivitamin
Plus More to:

7

*Specially Formulated*
*to help you*
*While You* **Control**
      ***Your Weight***

• ENHANCE YOUR METABOLISM
  WITH EGCG (GREEN TEA EXTRACT)*
• CONVERT FOOD TO FUEL
  WITH EXTRA† CHROMIUM AND
  KEY B VITAMINS*

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.
††Refers to 33% increase in Chromium compared to original formula.

(Exhibit J)

## CAUSE OF ACTION

11.    Through the means described in Paragraph 10, in connection with the advertising, offering for sale, sale, or distribution of One-A-Day WeightSmart multivitamin and dietary supplement, defendant has represented, directly or by implication, on numerous occasions that One-A-Day WeightSmart:

    a.    Increases metabolism;

    b.    Enhances metabolism through its EGCG content;

    c.    Helps prevent some of the weight gain associated with a decline in metabolism in users over age 30; and

    d.    Helps users control their weight by enhancing their metabolism.

12.    Defendant has made the representations set forth in Paragraph 11 without possessing and relying upon competent and reliable scientific evidence to substantiate the representations, thereby violating Part II of the Commission's Order.

## CIVIL PENALTIES AND EQUITABLE RELIEF

13.    Each dissemination by defendant of an advertisement containing any representation in violation of the Commission's Order, in one or more of the ways described above, constitutes a separate violation for which plaintiff seeks monetary civil penalties.

14.    Section 5(l) of the FTC Act, 15 U.S.C. § 45(l), as modified by Section 4 of the Federal

Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and Section 1.98(c) of the

FTC's Rules of Practice, 16 C.F.R. § 1.98(c), authorizes this Court to award monetary civil

penalties of not more than $11,000 for each violation of the Commission's Order.

15.    Under Sections 5(l) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(l) and 53(b), this Court is

authorized to issue a mandatory injunction and such other and further equitable and ancillary

relief as it may deem appropriate in the enforcement of the Commission's Order and the FTC

Act,  including disgorgement and restitution to prevent and remedy any violations of any

provision of law enforced by the Commission.

PRAYER FOR RELIEF

WHEREFORE, plaintiff requests this Court, pursuant to 15 U.S.C. §§ 45(l) and 53(b),

and pursuant to the Court's own equitable powers to:

(1)    Enter judgment against defendant and in favor of plaintiff for each violation

alleged in this Complaint;

(2)    Award plaintiff monetary civil penalties from defendant for each violation of the

Commission's Order alleged in this Complaint;

(3)    Enjoin defendant from violating the Commission's Order;

(4)    Award such equitable relief as the Court finds necessary to redress injury to

consumers resulting from defendant's violations of the FTC Order, including, but not limited to,

rescission of contracts, restitution, and disgorgement of ill-gotten gains; and

(5)    Award plaintiff such additional relief as the Court may deem just and proper.

DATED: January 3, 2007

9

OF COUNSEL:

JAMES A. KOHM
Associate Director
 for Enforcement
Federal Trade Commission

ROBERT M. FRISBY
Assistant Director
 for Enforcement
Federal Trade Commission

WALTER C. GROSS
Attorney
Division of Enforcement
Federal Trade Commission

KEITH FENTONMILLER
MATTHEW DAYNARD
SARAH BOTHA
Attorneys
Division of Advertising Practices
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580

FOR THE UNITED STATES OF AMERICA

JEFFREY BUCHOLTZ
Acting Assistant Attorney General
Civil Division
U.S. Department of Justice

CHRISTOPHER J. CHRISTIE
United States Attorney
District of New Jersey

By: _Daniel J Gibbons_____
DANIEL GIBBONS
Assistant United States Attorney
Peter W. Rodino Federal Building
7th Floor
970 Broad Street
Newark, NJ 07102
(973) 645-2700

EUGENE M. THIROLF
Director
Office of Consumer Litigation

KENNETH L. JOST
Assistant Director
Office of Consumer Litigation

_Jeffrey Steger_____
JEFFREY STEGER
Trial Attorney
Office of Consumer Litigation
U.S. Department of Justice
1331 Pennsylvania Avenue
Room 950 North
Washington, D.C. 20044
Phone: (202) 307-0047
Fax: (202) 514-8742
Jeffrey.Steger@usdoj.gov

10

# EXHIBIT A

9023010
B092205

## UNITED STATES OF AMERICA
## BEFORE FEDERAL TRADE COMMISSION

**COMMISSIONERS:**      Janet D. Steiger, Chairman
Terry Calvani
Mary L. Azcuenaga
Andrew J. Strenio, Jr.
Deborah K. Owen

|  |  |
|---|---|
| In the Matter of )<br><br>MILES INC., )<br>a corporation. ) | DOCKET NO. C-3323<br><br>DECISION AND ORDER |

The Federal Trade Commission having initiated an investigation of certain acts and practices of the respondent named in the caption hereof, and the respondent having been furnished thereafter with a copy of a draft of Complaint which the Cleveland Regional Office proposed to present to the Commission for its consideration and which, if issued by the Commission, would charge respondent with violation of the Federal Trade Commission Act; and

The respondent, its attorneys, and counsel for the Commission having thereafter executed an Agreement Containing a Consent Order, an admission by the respondent of all the jurisdictional facts set forth in the aforesaid draft of Complaint, a statement that the signing of said Agreement is for settlement purposes only and does not constitute an admission by respondent that the law has been violated as alleged in such Complaint, and waivers and other provisions as required by the Commission's Rules; and

The Commission having thereafter considered the matter and having determined that it had reason to believe that the respondent has violated the said Act, and that Complaint should issue stating its charges in that respect, and having thereupon accepted the executed Consent Agreement and placed such Agreement on the public record for a period of sixty (60) days, now in further conformity with the procedure prescribed in § 2.34 of its Rules, the Commission hereby issues its Complaint, makes the following jurisdictional findings, and enters the following Order:

1.     Respondent is a corporation organized, existing and doing business under and by virtue of the laws of the State of Indiana, with its office and principal place of business located at 1127 Myrtle Street, Post Office Box 40, Elkhart, Indiana 46515.

2.     The Federal Trade Commission has jurisdiction of the subject matter of this proceeding and of the respondent{s}, and the proceeding is in the public interest.

## O R D E R

### I

**IT IS ORDERED** that respondent Miles Inc., a corporation, its successors and assigns, and its officers, agents, representatives and employees, directly or through any corporation, subsidiary, division or other device, in connection with the advertising, offering for sale, sale or distribution of vitamin and/or mineral supplements, do forthwith cease and desist from representing, directly or by implication, that consumption of any such product:

(A)     affords any protection or benefit to human lungs;

(B)     is necessary or beneficial in replacing any vitamin and/or mineral lost through physical exercise;

(C)     is necessary or beneficial in replacing any vitamins and/or minerals lost as a result of, or provides any benefit with regard to, the stress of daily living;

unless, at the time such representation is made, respondent possesses and relies upon a reasonable basis consisting of competent and reliable scientific evidence to substantiate the representation; competent and reliable scientific evidence shall mean those tests, analyses, research, studies or other evidence, conducted and evaluated in an objective manner by persons qualified to do so using procedures generally accepted by others in the profession or science to yield accurate and reliable results.

### II

**IT IS FURTHER ORDERED** that respondent Miles Inc., a corporation, its successors and assigns, and its officers, agents, representatives and employees, directly or through any corporation, subsidiary, division or other device, in connection with the advertising, offering for sale, sale or distribution of One-A-Day brand vitamins, including specifically, but not limited to, One-A-Day Maximum Formula, One-A-Day

- 2 -

Exhibit "A", page 32 of 67

Stressgard, One-A-Day Essential, One-A-Day Plus Extra C, and One-A-Day Within, do forthwith cease and desist from making any representation, directly or by implication, concerning the need for or benefits to be derived from consumption of such product unless, at the time such representation is made, respondent possesses and relies upon a reasonable basis consisting of competent and reliable scientific evidence to substantiate the representation; competent and reliable scientific evidence shall mean those tests, analyses, research, studies or other evidence, conducted and evaluated in an objective manner by persons qualified to do so using procedures generally accepted by others in the profession or science to yield accurate and reliable results.

## III

**IT IS FURTHER ORDERED** that, for three (3) years from the date that the representations are last disseminated, respondent shall maintain and upon request make available to the Commission for inspection and copying:

(A)    All materials relied upon to substantiate any claim or representation covered by this Order; and

(B)    All tests, reports, studies, surveys or other materials in its possession or control that contradict, qualify or call into question such representation or the basis upon which respondent relied for such representation.

## IV

**IT IS FURTHER ORDERED** that respondent shall distribute a copy of this Order to each officer and other person responsible for the preparation or review of advertising material for products subject to this Order.

## V

**IT IS FURTHER ORDERED** that respondent shall notify the Commission at least thirty (30) days prior to the effective date of any proposed change in the corporate respondent such as dissolution, assignment or sale resulting in the emergence of a successor corporation, the creation or dissolution of subsidiaries, or any other change in the corporation which may affect compliance obligations arising out of this Order.

- 3 -

## VI

**IT IS FURTHER ORDERED** that respondent shall, within sixty (60) days after service of this Order, file with the Commission a report, in writing, setting forth in detail the manner in which it has complied with this Order.

By the Commission. Commissioner Starek did not participate.

*Donald S. Clark*

DONALD S. CLARK
Secretary

SEAL:

ISSUED: January 28, 1991.

- 4 -

# EXHIBIT B

One-A-Day WeightSmart
"Remember When" :30



MOM: I remember when I thought...



I could eat anything.



DAUGHTER: Want another piece?
MOM: No Thanks.



MOM: Then in my 30's, and my metabolism slowed down. So, I got smart.



MOM: I watch what I eat. Exercise more.



MOM: Plus, I found a new multivitamin.



AVO: One-A-Day WeightSmart.



AVO: The first and only complete multivitamin with an...



AVO: ...ingredient to enhance your metabolism.



AVO: EGCG, a natural green tea extract, to help you...



AVO: ...while you manage your weight.



MOM: A multivitamin for my metabolism. Now that's smart.



AVO: One-A-Day WeightSmart.

# EXHIBIT C

One-A-Day WeightSmart "Boom Box" :15 MIWS4306 (ALL other)



MALE (VO) (ON RADIO): Just in!



Most women over 30



can gain 10 pounds a decade,



due in part to slowing metabolism.



(SFX: WHOOSH IN & OUT) So



(SFX: RADIO FLYING OUT THE WINDOW) eat right, exercise,



and take One A Day Weight Smart. The complete multi-vitamin with EGCG to enhance metabolism.



WOMAN: Now you tell me.



MALE (VO) (ON RADIO): One A Day Weight Smart.

VIDEO ALSO AVAILABLE IN ANALOG & DIGITAL FORMATS

Material supplied by VMS may be used for internal review, analysis or research only. Any editing, reproduction, publication, re-broadcasting, public showing or display for profit is forbidden and may violate copyright law.

330 West 42nd Street, New York, NY 10036  T  212 736 2010

# EXHIBIT D

One-A-Day WeightSmart "Saturday Morning" :30 MIWS4023 (ALL other)



(MUSIC IN)



WOMAN: There was a time when I ate like this.



(MUSIC)



But then, in my 30s, my metabolism slowed down.



So now I exercise more, eat smarter.



And I found One A Day Weight Smart.



FEMALE ANNCR: One A Day Weight Smart.



The first complete multivitamin with EGCG, a natural green tea extract to enhance metabolism



to help you while you manage your weight.



WOMAN: A multivitamin for my metabolism, now that's smart.



ANNCR: One A Day



Weight Smart. (MUSIC OUT)

VIDEO ALSO AVAILABLE IN ANALOG & DIGITAL FORMATS

Material supplied by VMS may be used for internal review, analysis or research only. Any editing, reproduction, publication, re-broadcasting, public showing or display for profit is forbidden and may violate copyright law.
330 West 42nd Street, New York, NY 10036  T  212 736 2010

# EXHIBIT E

WeightSmart "Simple Exercise" :30 (ABC/FOX/WB/CBL/SYND)

| | | |
|---|---|---|
|  |  |  |
| WOMAN(OC) After 30, your metabolism can slow down | and you know how hard that can make things. | Here's an easy exercise |
|  |  |  |
| that can help. | One-A-Day WeightSmart. | Just lift, and twist and bend. |
|  |  |  |
| AVO: One-A-Day WeghtSmart. | A complete multivitamin with EGCG, a natural green tea extract, to enhance metabolism.<br><br>SUPER: For nutritional support only. Not a weight loss product. | WOMEN: And lift and twist and bend.<br><br>SUPER: Use with diet and exercise. |
|  |  |  |
| WOMAN: Just once a day. That's easy. | AVO: One-A-Day WeightSmart. | The multivitamin with more for your metabolism.<br><br>SUPER: The multivitamin with more for your metabolism. |

# EXHIBIT F

One-A-Day WeightSmart / "Dessert" :15





JANE: You know what I do? I eat right,

MARTHA: What can you do?

JANE: Yea, in your 30's your metabolism slows.






MARTHA: Every little bit helps.

VISUAL: EGCG POPS OUT AND GLOWS.

JANE: It's a complete multivitamin, with EGCG, to help enhance metabolism.

SUPER: For nutritional support only. Not a weight loss product.
SUPER (CBS): This statement have not been evaluated by the FDA. This product is not intended to diagnose, treat, cure or prevent any disease.



JANE: and I switched to One-A-Day WeightSmart.




JANE: Do you want some dessert?

MARTHA: Not with my metabolism.

JANE: exercise,



AVO: One-A-Day WeightSmart.

# EXHIBIT G

One-A-Day WeightSmart / "Beach" :15 TV / 6.21.05







MOM 1: With my metabolism?

AVO: It's a complete multivitamin...

SUPER: For nutritional support only. Not a weight loss product.
SUPER (CBS): These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.







MOM 2: Yea, in your 30's, your metabolism slows. So I eat right, I exercise, and I switched to One-A-Day WeightSmart.

MOM 1: I'll take all the help I can get.

AVO: One-A-Day WeightSmart.

SILENT SUPER: oneaday.com







MOM 2: Ice cream?

MOM 1: With my metabolism?

AVO: to help enhance metabolism.

AVO: with EGCG...

SUPER: For nutritional support only. Not a weight loss product.
SUPER (CBS): These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

SUPER: For nutritional support only. Not a weight loss product.
SUPER (CBS): These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

# EXHIBIT H

You're working on your metabolism.



Is your multivitamin?



### Introducing New One-A-Day WeightSmart.

Starting in your 30s, your metabolism slows down and you can gain weight. Now One-A-Day WeightSmart is the first and only complete multivitamin with EGCG, a natural green tea extract that enhances your metabolism to help while you work to control your weight. When you do your part by eating right and exercising, One-A-Day WeightSmart can help.

The multivitamin with more for your health.

Bayer⊕
©2005

For nutritional support as part of a healthy lifestyle. These statements have not been evaluated by the FDA. This product is not intended to diagnose, treat, cure or prevent any disease.

# EXHIBIT I

# One-A-Day WeightSmart

## FREQUENTLY ASKED QUESTIONS

Q. Where can I purchase One-A-Day WeightSmart?
Q. What is EGCG?
Q. Does this product contain caffeine?
Q. Can I use this product with my medication?
Q. Can I take One-A-Day WeightSmart with another multivitamin?
Q. Will this product help control my weight?
Q. How does your metabolism work?
Q. Does this product contain ephedra?
Q. Is One-A-Day WeightSmart safe?
Q. This product didn't work for me - it doesn't seem to help control my weight.
Q. Can a teenager or man use this product?
Q. How does One-A-Day WeightSmart differ from weight loss products like Dexatrim and Metabolife?
Q. How is WeightSmart different from other multivitamins?

**Q. Where can I purchase One-A-Day WeightSmart?**
**A.** WeightSmart can be found in the multivitamin section of most drug stores, food stores, mass merchandisers, and club stores. In select stores, WeightSmart may also be located in the diet section to help promote a healthy lifestyle and provide general nutritional support while you work to control your weight. If you do not find it on your local store shelf, ask the store manager to order it for you. We have found that most stores make their purchasing decisions based on consumer interest.

Back to Top

**Q. What is EGCG?**
**A.** EGCG, short for epigallocatechin gallate, is a natural extract of Green Tea that enhances metabolism to help consumers who are working to control their weight with diet and exercise.

Back to Top

**Q. Does this product contain caffeine?**
**A.** Yes, One-A-Day WeightSmart does contain a small amount of caffeine (15mg) equivalent to less than 1/4 cup of coffee. This amount falls far below the levels contained in traditional diet aids, which can exceed 100mg and create a "jittery" feeling.

Back to Top

**Q. Can I use this product with my medication?**
**A.** We recommend that you consult with your physician before using any One-A-Day product if you are taking medications.

Back to Top

**Q. Can I take One-A-Day WeightSmart with another multivitamin?**
**A.** We do not recommend taking One-A-Day with another multivitamin.

Back to Top

**Q. Will this product help control my weight?**
**A.** No. This is a multivitamin supplement to enhance your metabolism while you're working to control your weight. It is one thing you can do as part of a healthy lifestyle while you're working to control your weight.

Back to Top

Q. How does your metabolism work?
A. Metabolism is the sum of all reactions in the body. Burning fat is an important part of metabolism. As you burn fat, you are using up calories and if you burn more calories than you take in, you can lose weight. However, as you enter your 30's, your metabolism will naturally slow down and you may gain weight.

To help keep your metabolism going strong, One-A-Day created WeightSmart. With the key ingredient EGCG (Green Tea Extract), WeightSmart is a complete multivitamin plus more to enhance your metabolism while you are working to control your weight.

Back to Top

Q. Does this product contain ephedra?
A. No! One-A-Day WeightSmart does not contain ephedra or any other ephedra-based ingredient, such as ma huang or guarana.

Back to Top

Q. Is One-A-Day WeightSmart safe?
A. Yes! The health of our consumers is our top priority. We work to ensure that our products do not cause adverse reactions.

Back to Top

Q. This product didn't work for me - it doesn't seem to help control my weight.
A. One-A-Day WeightSmart is not a weight-control product. There are many factors involved in weight control: it is a long-term process that includes eating right and exercising. WeightSmart is a multivitamin supplement to help you while you control your weight with diet and exercise. It is not a diet aid or weight loss product.

Back to Top

Q. Can a teenager or man use this product?
A. We have designed this product for men and women 18 years of age and older. It will provide the benefits of a complete multivitamin.

Back to Top

Q. How does WeightSmart differ from weight loss products like Dexatrim and Metabolife?
A. One-A-Day WeightSmart is not a weight loss product. One-A-Day WeightSmart is a complete multivitamin specially formulated with 100% or more of key vitamins and minerals men and women need when watching their weight. Plus, it contains EGCG (Green Tea Extract), to enhance their metabolism as they work to control their weight. WeightSmart is a safe way to supplement consumers' weight control regimen and should be used as part of a healthy lifestyle that includes a balanced diet and exercise.

Diet aids, on the other hand, are designed to deliver weight loss results. As a result, they may contain ingredients, such as ephedra, ma huang, or guarana. At the same time, these products only provide a few nutrients and at low % Daily Value levels so consumers may not get the vitamins and minerals they need, which is particularly important when watching their weight.

Back to Top

Q. How is WeightSmart different from other multivitamins?
A. When adults are controlling their weight, they are eating less than they normally do and they may not be getting all the nutrients they need. To meet this need, One-A-Day WeightSmart was formulated especially for consumers who are watching their weight. It starts as a complete multivitamin with 100% of essential vitamins and minerals men and women need when watching their weight including:

Calcium which is one of the most overlooked nutrients when controlling one's weight. At 300mg or 30% of the Daily Value, this level in WeightSmart far exceeds what most adults get in a multivitamin. Centrum® for example contains only 162mg or 16% of the Daily Value.

Chromium and B-Vitamins are essential in helping to convert food to energy. At 100% or more of the Daily Value, these B Vitamins and chromium are an important component of One-A-Day WeightSmart.

<u>Back to Top</u>

# EXHIBIT J



Exhibit "B"

CHRISTOPHER J. CHRISTIE
United States Attorney

Daniel Gibbons
Assistant United States Attorney
Peter W. Rodino Federal Building
7th Floor
970 Broad Street
Newark, NJ  07102

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>BAYER CORPORATION, )<br><br>Defendant ) | CIV. ACTION NO. |

### **CONSENT DECREE**

WHEREAS:  Plaintiff, the United States of America, has commenced this action by filing the Complaint herein; defendant, Bayer Corporation, has waived service of the Summons and Complaint; the parties have been represented by the attorneys whose names appear hereafter; defendant does not admit that it has violated the law as alleged in the complaint or that the facts as alleged in the complaint, other than the jurisdictional facts, are true; and the parties have agreed to settlement of this action upon the following terms and conditions, without adjudication of the merits of any issue of fact or law;

Consent Decree,  Page 1 of 12

THEREFORE, on the joint motion of plaintiff and defendant, it is hereby ORDERED and DECREED as follows:

1.      This Court has jurisdiction over the subject matter and the parties.

2.      The Complaint states a claim upon which relief may be granted against defendant under Sections 5(l), 13(b) and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(l), 53(b) and 56(a).

## DEFINITIONS

1.      "Bayer Corporation" means Bayer Corporation and all of its divisions and subsidiaries, including, but not limited to, Bayer Healthcare, LLC;

2.      "Commerce" means as defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44;

3.      "Competent and reliable scientific evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

4.      "FTC" or "Commission" means the Federal Trade Commission.

5.      "FTC Order" means the FTC Order in FTC Docket No. C-3323, a copy of which is attached hereto as Exhibit A and made part of this Consent Decree.

6.      "Person" means a natural person, organization or other legal entity, including a partnership, corporation, proprietorship, association, cooperative, or any other group acting together as an entity.

7.      "Weight control product" means any dietary supplement or food product or program designed or used to prevent weight gain, or to produce weight loss, reduction or elimination of fat, slimming, or caloric deficit, in a user of the product or program.

Consent Decree,  Page 2 of 12

8.     The terms "and" and "or" in this Consent Decree shall be construed conjunctively or disjunctively, as necessary, to make the applicable phrase or sentence inclusive rather than exclusive.

9.     The term "including" in this Consent Decree means "including, without limitation."

## I.

## CIVIL PENALTY

**IT IS FURTHER ORDERED** that:

A.     Pursuant to Section 5(l) of the FTC Act, 15 U.S.C. § 45(l), defendant Bayer Corporation, and its successors and assigns, shall pay a monetary civil penalty of three million, two hundred thousand dollars ($3,200,000);

B.     Defendant, and its successors and assigns, shall make the payment required by Subpart A of this Part within five (5) days after the date of entry of this Consent Decree by electronic fund transfer in accordance with the instructions provided by: The Office of Consumer Litigation, Civil Division, U.S. Department of Justice, Washington, D.C. 20530; and

C.     In the event of any default in payment, which default continues for ten (10) days beyond the due date of payment, the entire unpaid penalty, together with interest as computed pursuant to 28 U.S.C. § 1961 from the date of default to the date of payment, immediately will become due and payable.

## II.

## PROHIBITION AGAINST VIOLATING FTC ORDER

**IT IS FURTHER ORDERED** that defendant Bayer Corporation, and its successors and assigns, and their officers, agents, representatives, and employees, and all persons in active concert or participation with any one or more of them who receive actual notice of this Consent

Consent Decree,  Page 3 of 12

Decree by personal service or otherwise, are hereby permanently enjoined from ever violating,

directly or through any corporation, subsidiary, division, or other device, any provision of the

FTC Order; *provided, however,* that, in the event that the FTC Order is hereafter modified,

defendant's compliance with such Order as so modified will not be deemed a violation of this

Part.

**III.**

**PROHIBITED UNSUBSTANTIATED REPRESENTATIONS**

**IT IS FURTHER ORDERED** that defendant Bayer Corporation, and its successors and

assigns, and their officers, agents, representatives, and employees, and all persons in active

concert or participation with any one or more of them who receive actual notice of this Consent

Decree by personal service or otherwise, directly or through any corporation, subsidiary,

division, or other device, in connection with the manufacturing, labeling, advertising, promotion,

offering for sale, sale, or distribution of any dietary supplement, multivitamin, including but not

limited to One-A-Day WeightSmart, or weight-control product, in or affecting commerce, are

hereby permanently enjoined from making any representation, including through endorsements

or trade name, expressly or by implication:

    A.    That such product or any of its ingredients:

        1.    Increases metabolism;

        2.    Enhances metabolism through its EGCG content;

        3.    Helps prevent some of the weight gain associated with a decline in

            metabolism in users over age 30;

        4.    Helps users control their weight by enhancing their metabolism;

        5.    Makes a material contribution to any program or system that promotes

            weight maintenance;

Consent Decree,  Page 4 of 12

6.      Can or will cure, treat, or prevent any disease; or

7.      Have any effect on the structure or function of the human body; or

B.      About the benefits, performance, efficacy, safety or side effects, of such product

or any of its ingredients;

*unless* at the time the representation is made, defendant Bayer Corporation possesses and relies

upon competent and reliable scientific evidence that substantiates the representation.

## IV.

## FOOD AND DRUG ADMINISTRATION

**IT IS FURTHER ORDERED** that nothing in this Consent Decree prohibits defendant

Bayer Corporation from making:

A.      Any representation for any drug that is permitted in the labeling for such drug

under any tentative final or final standard promulgated by the Food and Drug

Administration, or under any new drug application approved by the Food and

Drug Administration; and

B.      Any representation for any product that is specifically permitted in labeling for

such product by regulations promulgated by the Food and Drug Administration

pursuant to the Nutrition Labeling and Education Act of 1990.

## V.

## DISTRIBUTION OF CONSENT DECREE BY DEFENDANT

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Consent Decree, defendant Bayer Corporation, and its successors and assigns, shall:

A.      Provide a copy of the Consent Decree and FTC Order to, and obtain a signed and dated acknowledgment of receipt from: each officer and director; and all personnel, whether such persons are designated as employees, consultants, independent contractors or otherwise, having supervisory responsibilities with respect to the advertising or promotion of any product or program covered by this Consent Decree. A copy of the Consent Decree and FTC Order shall be delivered to current personnel within thirty (30) days after the date of entry of the Consent Decree, and to future personnel within thirty (30) days after the person assumes such position or responsibilities; and

B.      Maintain, for a period of three (3) years after creation, and upon request, make available to representatives of the Commission, the original signed and dated acknowledgments required in Subpart A of this Part.

## VI.

## RECORD-KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Consent Decree, defendant Bayer Corporation, and its successors and assigns, shall maintain and, upon request, make available to the Commission, copies of all business records demonstrating compliance with the terms and provisions of this Consent Decree, including but not limited to:

A.    Accounting records that reflect the cost of products and programs sold, revenues generated and the disbursement of such revenues;

B.    Personnel records accurately reflecting the name, address, and telephone number of each officer and director; and all personnel, whether such persons are designated as employees, consultants, independent contractors or otherwise, having supervisory responsibilities with respect to the advertising or promotion of any product or program covered by this Consent Decree; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.    A copy of each advertisement containing any representation covered by this Consent Decree, including a videotape of any television advertisement and an audiotape of any radio advertisement;

D.    All materials that were relied upon in disseminating such representation; and

E.    All tests, reports, studies, surveys, demonstrations, or other evidence in their possession or control that contradict, qualify, or call into question such representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer protection organizations.

## VII.

## COMPLIANCE REPORTING BY DEFENDANT

**IT IS FURTHER ORDERED** that:

A.    For a period of ten (10) years from the date of entry of this Consent Decree, defendant Bayer Corporation, and its successors and assigns, shall notify the Commission of any changes in corporate structure that may affect compliance obligations arising out of this Consent Decree, including but not limited to,

dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation, the creation or dissolution of a subsidiary, parent or affiliate that engages in the acts or practices subject to this Consent Decree, the filing of a bankruptcy petition, or change in the corporate name or address, at least thirty (30) days prior to the effective date of any proposed change; *provided* that, with respect to any proposed change in a corporation about which defendant learns less than thirty (30) days prior to the date such action is to take place, defendant shall notify the Commission as soon as is practicable after obtaining such knowledge;

B.     Within thirty (30) days after receipt of a written request by a representative of the Commission, defendant Bayer Corporation, and its successors and assigns, shall submit written reports (under oath, if requested) and produce documents with respect to any conduct subject to this Consent Decree; and

C.     Defendant Bayer Corporation shall, in accordance with 31 U.S.C. § 7701, furnish to the Commission its taxpayer identifying number (employer identification number), which will be used for purposes of collecting and reporting on any delinquent amount arising out of defendant's relationship with the government.

## VIII.

## WRITTEN NOTIFICATIONS BY DEFENDANT

**IT IS FURTHER ORDERED** that, for the purposes of this Consent Decree, defendant Bayer Corporation shall, unless otherwise directed by the Commission or its representatives, mail all written notifications to the Commission or the Commission's Associate Director for Enforcement to:

Associate Director for Enforcement

Consent Decree,  Page 8 of 12

Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Re: U.S. v. Bayer Corporation (Miles, Inc.)

## IX.

### CONTINUING JURISDICTION

**IT IS FURTHER ORDERED** that this Court will retain jurisdiction of this matter for the purpose of enabling any of the parties to the Consent Decree to apply to the Court at any time for such further orders or directives as may be necessary or appropriate for the interpretation or modification of this Consent Decree, for the enforcement of compliance therewith, for the redress of any violations thereof, or for the punishment of any violations thereof.

## X.

### SCOPE OF CONSENT DECREE

**IT IS FURTHER ORDERED** that:

A.  Except with regard to its enforcement by the United States, this Consent Decree does not constitute evidence of any liability, wrongdoing, or fault by defendant Bayer Corporation, and it shall not have any preclusive effect on any claim or defense of any person or entity in any pending or future legal or administrative proceeding or action; and

B.  This Consent Decree resolves only claims against the named defendant and does not preclude the United States from initiating further action or seeking any remedy against any other persons or entities, including without limitation persons or entities who may be subject to portions of this Consent Decree by virtue of actions taken in concert or participation with defendant, and persons or entities in any type of indemnification or contractual relationship with defendant.

Consent Decree, Page 9 of 12

**SO ORDERED.**

**APPROVED** this _____ day of _____, 2006.


_____
United States District Judge


      The parties, by their respective counsel, hereby consent to the terms and conditions of the

Consent Decree as set forth above and consent to the entry thereof.  Defendant waives any rights

that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412, amended by Pub. L.

104-21, 110 Stat. 847, 863-64 (1996).


                      FOR THE UNITED STATES OF AMERICA:

                      PETER D. KEISLER
                      Assistant Attorney General
                      Civil Division
                      United States Department of Justice

                      CHRISTOPHER J. CHRISTIE
                      United States Attorney
                      District of New Jersey


        By:   _____
                      Daniel Gibbons
                      Assistant United States Attorney
                      Peter W. Rodino Federal Building
                      7th Floor
                      970 Broad Street
                      Newark, NJ  07102
                      (973) 645-2828


        Consent Decree,  Page 10 of 12

EUGENE M. THIROLF
Director
Office of Consumer Litigation


Jeffrey Steger
Attorney
Office of Consumer Litigation
Civil Division
U.S. Department of Justice
Washington, D.C. 20530
(202)-307-0047


FOR THE FEDERAL TRADE COMMISSION:

JAMES A. KOHM
Associate Director for Enforcement

ROBERT FRISBY
Assistant Director for Enforcement


WALTER GROSS III
Attorney
Division of Enforcement
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-3319


KEITH R. FENTONMILLER
MATTHEW DAYNARD
Attorneys
Division of Advertising Practices
Bureau of Consumer Protection
Federal Trade Commission
Washington, D.C. 20580
(202) 326-2775 (KRF)
(202) 326-3291 (MD)


Consent Decree,  Page 11 of 12

FOR THE DEFENDANT:

BAYER CORPORATION

By: _____

By: _____
I. SCOTT BASS
THOMAS C. GREEN
DEBORAH F. ZERWITZ
Sidley Austin LLP
Attorneys for Defendant Bayer Corporation

Consent Decree,  Page 12 of 12